STATE OF MINNESOTA

COUNTY OF RAMSEY

DISTRICT COURT

SECOND JUDICIAL DISTRICT

CASE TYPE:  Products Liability

| | |
|---|---|
| Danny Adams, Jonathan Albert, Billy Barnett, Robert Barton, Zachary Bennett, David Betz, Jeffrey Bohne, Aaron Brady, Roderick Byrne, Nelson Callahan, Joshua Cannon, Ricco Chalmers, Tony Jackson, Luke Landry, David Leon Cartagena, Jason Lindsey, Michael Manchur, Acie Maynard, Robert McClintock, Aaron McDonald, Gary Moore, Harold Mussared, Dean Myhand, Christopher Myrick, Brandon Nielsen, Brandon Parsons, Henry Prim, John Purcell, John Ray, Danny Richard, Michael Ries, Edwin Rivera, Carlos Rodriguez, Christopher Roemhildt, David Russo,  Joseph Safer, Tyler Schafer, Matthew Schumacher, William Segel, Sean Smith, John Springstube, Chase Stepp, Michael Tolbert, Julio Torres, Mayra Villarrubia-Bonilla, Stephen Wagner, Michael Williams, Kenji Yamauchi, Michael Yarber, and David Yenne, <br><br>         Plaintiffs, <br><br> v. <br><br> 3M COMPANY, and AEARO TECHNOLOGIES LLC, <br><br>         Defendants. | **SUMMONS** <br><br> **Jury Trial Demanded** |

TO: THE STATE OF MINNESOTA AND THE ABOVE-NAMED DEFENDANTS:

1.    **YOU ARE BEING SUED.**  The plaintiffs have started a lawsuit against you.  The plaintiffs' Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

2.    **YOU MUST REPLY WITHIN TWENTY (20) DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons **a written response** called an Answer within twenty (20) days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at Johnson Becker, PLLC, 444 Cedar Street, Suite 1800, Saint Paul, Minnesota 55101.

3.    **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within twenty (20) days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the plaintiffs everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.    **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6.    **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: July 25, 2019                    JOHNSON BECKER, PLLC

Stacy Hauer (#0317093)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Tel.: (612) 436-1800
Fax: (612) 436-1801
shauer@johnsonbecker.com

Raymond C. Silverman (*Pro Hac Vice Anticipated*)
Melanie H. Muhlstock (*Pro Hac Vice Anticipated*)
Parker Waichman LLP
6 Harbor Park Drive
Port Washington, NY 11050
516-466-6500 | 516-466-6665
rsilverman@yourlawyer.com
mmuhlstock@yourlawyer.com

*Attorneys for Plaintiff*

STATE OF MINNESOTA

COUNTY OF RAMSEY

DISTRICT COURT

SECOND JUDICIAL DISTRICT

CASE TYPE: Products Liability

Danny Adams, Jonathan Albert, Billy Barnett, Robert Barton, Zachary Bennett, David Betz, Jeffrey Bohne, Aaron Brady, Roderick Byrne, Nelson Callahan, Joshua Cannon, Ricco Chalmers, Tony Jackson, Luke Landry, David Leon Cartagena, Jason Lindsey, Michael Manchur, Acie Maynard, Robert McClintock, Aaron McDonald, Gary Moore, Harold Mussared, Dean Myhand, Christopher Myrick, Brandon Nielsen, Brandon Parsons, Henry Prim, John Purcell, John Ray, Danny Richard, Michael Ries, Edwin Rivera, Carlos Rodriguez, Christopher Roemhildt, David Russo,  Joseph Safer, Tyler Schafer, Matthew Schumacher, William Segel, Sean Smith, John Springstube, Chase Stepp, Michael Tolbert, Julio Torres, Mayra Villarrubia-Bonilla, Stephen Wagner, Michael Williams, Kenji Yamauchi, Michael Yarber, and David Yenne,

      Plaintiffs,

v.

3M COMPANY and
AEARO TECHNOLOGIES LLC,

      Defendants.

**COMPLAINT**


**Jury Trial Demanded**

Plaintiffs, Danny Adams, Jonathan Albert, Billy Barnett, Robert Barton, Zachary Bennett, David Betz, Jeffrey Bohne, Aaron Brady, Roderick Byrne, Nelson Callahan, Joshua Cannon, Ricco Chalmers, Tony Jackson, Luke Landry, David Leon Cartagena, Jason Lindsey, Michael Manchur, Acie Maynard, Robert McClintock, Aaron McDonald, Gary Moore, Harold Mussared,

Dean Myhand, Christopher Myrick, Brandon Nielsen, Brandon Parsons, Henry Prim, John Purcell, John Ray, Danny Richard, Michael Ries, Edwin Rivera, Carlos Rodriguez, Christopher Roemhildt, David Russo,  Joseph Safer, Tyler Schafer, Matthew Schumacher, William Segel, Sean Smith, John Springstube, Chase Stepp, Michael Tolbert, Julio Torres, Mayra Villarrubia-Bonilla, Stephen Wagner, Michael Williams, Kenji Yamauchi, Michael Yarber, and David Yenne (collectively referred to herein as "Plaintiffs") bring this action against defendants 3M Company and Aearo Technologies LLC (collectively referred to herein as "Defendants"), and in support thereof allege:

## NATURE OF THE CASE

1.      Defendants knowingly sold dangerously defective Dual-Ended Combat Arms™ earplugs to the United States ("U.S.") military from 2003-2015 without disclosing their knowledge of those dangerous defects. Defendants did not disclose: that the Dual-Ended Combat Arms™ earplugs did not meet the written specifications provided by the U.S. Government; that the Dual-Ended Combat Arms™ earplugs did not fit properly into users' ear canals as required by ANSI S3.19-1974, Section 3.2.3 and ASA STD 1-1975; that the sound attenuation testing they performed violated ANSI S3.19-1974; that the sound attenuation testing they performed had results far below the "22" Noise Reduction Rating ("NRR") that would have been expected for the closed (olive) end of the earplug; the reasons why the sound attenuation testing they performed had results far below the "22" NRR that would have been expected for the closed (olive) end of the earplug; that when the earplugs are inserted into the ear according to their standard instructions, the basal edge of the third flange of the non-inserted end is prone to press against the ear canal and fold back to its original shape, causing the earplugs' seal to loosen. Further, Defendants did not provide adequate warnings or instructions for use.

2

2.     Plaintiff's lawsuit exposes the deception committed by Defendants, whose Dual-Ended Combat Arms™ earplugs have likely caused significant hearing injuries in the tens and possibly hundreds of thousands of U.S. military service members, including Plaintiff. Plaintiff's lawsuit is preceded by a separate lawsuit brought against 3M Company ("3M") by the Department of Justice under the *qui tam* provisions of the False Claims Act, alleging similar fraudulent representations. *United States of America ex rel. Moldex-Metric, Inc. v. 3M Company*, 3:16-cv-01533-DCC, filed May 12, 2016. That lawsuit resulted in Defendants paying the U.S. Government $9.1 million in July 2018. Department of Justice, Office of Public Affairs, Press Release, 3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs (July 25, 2018), available at https://www.justice.gov/opa/pr/3m-company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual (last accessed Jan. 15, 2019).  To this day, the Dual-Ended Combat Arms™ earplugs have not been recalled and continue to threaten the health and safety of U.S. military personnel who trust them to protect their hearing.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over Plaintiffs' claims under Minn. Stat. § 484.01, subd. 1.

4.     This action is not removable to federal court because Plaintiffs assert no claim arising under the Constitution, law, or treaties of the United States to satisfy 28 U.S.C. § 1331 and because the requirements of 28 U.S.C. § 1332(a) are not met. Further, Plaintiffs bring this suit in Defendants' home state and therefore 28 U.S.C. § 1441(b)(2) precludes removal.

5.      Venue in this Court is proper in that Defendant maintains its principal place of

business in the State of Minnesota, County of Ramsey, City of St. Paul, and transacts business

here. Minn. Stat. § 543.19.

### PARTIES

*Danny Adams*

6.      Plaintiff Danny Adams is a resident of Obetz, Ohio.

7.      During military service, Plaintiff Danny Adams was issued a pair of standard-issue

Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during

training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result

of the defective nature of the earplugs.

*Jonathan Albert*

8.      Plaintiff Jonathan Albert is a resident of Battletown, Kentucky.

9.      During military service, Plaintiff Jonathan Albert was issued a pair of standard-

issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs

during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as

a result of the defective nature of the earplugs.

*Billy Barnett*

10.     Plaintiff Billy Barnett is a resident of Killeen, Texas.

11.     During military service, Plaintiff Billy Barnett was issued a pair of standard-issue

Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during

training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result

of the defective nature of the earplugs.

4

***Robert Barton***

12.    Plaintiff Robert Barton is a resident of Medina, Tennessee.

13.    During military service, Plaintiff Robert Barton was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Zachary Bennett***

14.    Plaintiff Zachary Bennett is a resident of Telford, Tennessee.

15.    During military service, Plaintiff Zachary Bennett was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***David Betz***

16.    Plaintiff David Betz is a resident of Portland, Tennessee.

17.    During military service, Plaintiff David Betz was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Jeffrey Bohne***

18.    Plaintiff Jeffrey Bohne is a resident of Ponchatoula, Louisiana.

19.    During military service, Plaintiff Jeffrey Bohne was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during

training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Aaron Brady***

20.    Plaintiff Aaron Brady is a resident of Middlebourne, West Virginia.

21.    During military service, Plaintiff Aaron Brady was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Roderick Byrne***

22.    Plaintiff Roderick Byrne is a resident of Marbury, Alabama.

23.    During military service, Plaintiff Roderick Byrne was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Nelson Callahan***

24.    Plaintiff Nelson Callahan is a resident of Ewa Beach, Hawaii.

25.    During military service, Plaintiff Nelson Callahan was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Joshua Cannon***

26.    Plaintiff Joshua Cannon is a resident of Wheelersburg, Ohio.

27.     During military service, Plaintiff Joshua Cannon was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Ricco Chalmers*

28.     Plaintiff Ricco Chalmers is a resident of Memphis, Tennessee.

29.     During military service, Plaintiff Ricco Chalmers was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Tony Jackson*

30.     Plaintiff Tony Jackson is a resident of Cordova, Tennessee.

31.     During military service, Plaintiff Tony Jackson was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Luke Landry*

32.     Plaintiff Luke Landry is a resident of Saint Amant, Louisiana.

33.     During military service, Plaintiff Luke Landry was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*David Leon Cartagena*

34.    Plaintiff David Leon Cartagena is a resident of Bayamon, Puerto Rico.

35.    During military service, Plaintiff David Leon Cartagena was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Jason Lindsey*

36.    Plaintiff Jason Lindsey is a resident of Deltona, Florida.

37.    During military service, Plaintiff Jason Lindsey was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Michael Manchur*

38.    Plaintiff Michael Manchur is a resident of Ocala, Florida.

39.    During military service, Plaintiff Michael Manchur was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Acie Maynard*

40.    Plaintiff Acie Maynard is a resident of Medina, Tennessee.

41.    During military service, Plaintiff Acie Maynard was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during

8

training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Robert McClintock***

42.    Plaintiff Robert McClintock is a resident of Morgantown, Kentucky.

43.    During military service, Plaintiff Robert McClintock was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Aaron McDonald***

44.    Plaintiff Aaron McDonald is a resident of Noblesville, Indiana.

45.    During military service, Plaintiff Aaron McDonald was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Gary Moore***

46.    Plaintiff Gary Moore is a resident of Mobile, Alabama.

47.    During military service, Plaintiff Gary Moore was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Harold Mussared***

48.    Plaintiff Harold Mussared is a resident of Crossville, Tennessee.

49.    During military service, Plaintiff Harold Mussared was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Dean Myhand*

50.    Plaintiff Dean Myhand is a resident of Shelbyville, Tennessee.

51.    During military service, Plaintiff Dean Myhand was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Christopher Myrick*

52.    Plaintiff Christopher Myrick is a resident of Clarksville, Tennessee.

53.    During military service, Plaintiff Christopher Myrick was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Brandon Nielsen*

54.    Plaintiff Brandon Nielsen is a resident of Muldrow, Oklahoma.

55.    During military service, Plaintiff Brandon Nielsen was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

10

*Brandon Parsons*

56.    Plaintiff Brandon Parsons is a resident of Fairfield, California.

57.    During military service, Plaintiff Brandon Parsons was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Henry Prim*

58.    Plaintiff Henry Prim is a resident of Foley, Alabama.

59.    During military service, Plaintiff Henry Prim was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*John Purcell*

60.    Plaintiff John Purcell is a resident of Soddy Daisy, Tennessee.

61.    During military service, Plaintiff John Purcell was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*John Ray*

62.    Plaintiff John Ray is a resident of Dallas, Georgia.

63.    During military service, Plaintiff John Ray was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during

11

training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Danny Richard***

64.    Plaintiff Danny Richard is a resident of Scott, Louisiana.

65.    During military service, Plaintiff Danny Richard was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Michael Ries***

66.    Plaintiff Michael Ries is a resident of Woodbridge, Virginia.

67.    During military service, Plaintiff Michael Ries was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Edwin Rivera***

68.    Plaintiff Edwin Rivera is a resident of Houston, Texas.

69.    During military service, Plaintiff Edwin Rivera was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Carlos Rodriguez***

70.    Plaintiff Carlos Rodriguez is a resident of Corozal, Puerto Rico.

71.    During military service, Plaintiff Carlos Rodriguez was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Christopher Roemhildt***

72.    Plaintiff Christopher Roemhildt is a resident of Duluth, Minnesota.

73.    During military service, Plaintiff Christopher Roemhildt was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***David Russo***

74.    Plaintiff David Russo is a resident of Tampa, Florida.

75.    During military service, Plaintiff David Russo was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Joseph Safer***

76.    Plaintiff Joseph Safer is a resident of White House, Tennessee.

77.    During military service, Plaintiff Joseph Safer was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field.  Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Tyler Schafer*

78.     Plaintiff Tyler Schafer is a resident of Leander, Texas.

79.     During military service, Plaintiff Tyler Schafer was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Matthew Schumacher*

80.     Plaintiff Matthew Schumacher is a resident of St. Charles, Illinois.

81.     During military service, Plaintiff Matthew Schumacher was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*William Segel*

82.     Plaintiff William Segel is a resident of Thornwood, New York.

83.     During military service, Plaintiff William Segel was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Sean Smith*

84.     Plaintiff Sean Smith is a resident of Ransom, Kentucky.

85.     During military service, Plaintiff Sean Smith was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during

training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***John Springstube***

86.    Plaintiff John Springstube is a resident of Sheboygan, Wisconsin.

87.    During military service, Plaintiff John Springstube was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Chase Stepp***

88.    Plaintiff Chase Stepp is a resident of Mansfield, Ohio.

89.    During military service, Plaintiff Chase Stepp was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Michael Tolbert***

90.    Plaintiff Michael Tolbert is a resident of Kissimmee, Florida.

91.    During military service, Plaintiff Michael Tolbert was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Julio Torres***

92.    Plaintiff Julio Torres is a resident of Ceiba, Puerto Rico.

93.    During military service, Plaintiff Julio Torres was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Mayra Villarrubia-Bonilla***

94.    Plaintiff Mayra Villarrubia-Bonilla is a resident of Rincon, Puerto Rico.

95.    During military service, Plaintiff Mayra Villarrubia-Bonilla was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Stephen Wagner***

96.    Plaintiff Stephen Wagner is a resident of Russellville, Kentucky.

97.    During military service, Plaintiff Stephen Wagner was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

***Michael Williams***

98.    Plaintiff Michael Williams is a resident of Portland, Tennessee.

99.    During military service, Plaintiff Michael Williams was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Kenji Yamauchi*

100.    Plaintiff Kenji Yamauchi is a resident of Clarksville, Tennessee.

101.    During military service, Plaintiff Kenji Yamauchi was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Michael Yarber*

102.    Plaintiff Michael Yarber is a resident of Smyrna, Tennessee.

103.    During military service, Plaintiff Michael Yarber was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*David Yenne*

104.    Plaintiff David Yenne is a resident of Reno, Nevada.

105.    During military service, Plaintiff David Yenne was issued a pair of standard-issue Dual-Ended Combat Arms™ earplugs and wore the Dual-Ended Combat Arms™ earplugs during training and/or in the field. Plaintiff subsequently suffered hearing loss and/or tinnitus as a result of the defective nature of the earplugs.

*Defendants*

106.    Defendant 3M is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Minnesota. 3M is engaged in the business of researching, testing, developing, designing, manufacturing, licensing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or

17

indirectly through third parties or related entities, its products, including the Dual-Ended Combat Arms™ earplugs.

107.    Defendant Aearo Technologies LLC (hereinafter "Aearo"), is a Delaware limited liability company with a principal place of business in Indiana, which is registered to do business and receive service of process in Minnesota. Aearo is a wholly-owned subsidiary of Defendant 3M. At all relevant times and as relevant here, Defendant Aearo Technologies LLC utilized two assumed names: Aearo Company and Aearo Technologies.

## FACTUAL ALLEGATIONS

108.    The Dual-Ended Combat Arms™ earplugs were originally created, made, manufactured, constructed, assembled, designed, formulated, tested, promoted, advertised, marketed, distributed and/or sold by Defendants Aearo Technologies LLC.

109.    Defendant 3M acquired Aearo in 2008, including Aearo's liabilities, and is therefore liable for Aearo's conduct as alleged herein. Defendant 3M hired Aearo's employees that developed and tested the defective earplugs and maintains it as a separate operative unit of 3M. After the acquisition, the Dual-Ended Combat Arms™ earplugs were sold under the 3M brand.

110.    Defendants' Dual-Ended Combat Arms™ earplugs were intended to provide linear and non-linear/selective attenuation hearing protection.  Non-linear attenuation is also called level-dependent hearing protection.  The earplugs were designed to purportedly provide soldiers with two different options for hearing attenuation depending upon which end of the earplugs was inserted into the ear.

111.    The Dual-Ended Combat Arms™ earplugs with a yellow "open" end and an olive "closed" end are pictured below:

18



112.    In addition to providing hearing protection, the Dual-Ended Combat Arms™ earplugs were designed to help provide situational awareness by protecting against concussive disorientation effects associated with impulse noise. The design of the yellow or non-linear end was intended to allow users, including Service Members, to hear low level sounds, such as a person speaking in close range. This was one of the characteristics that caused the military to purchase the Dual-Ended Combat Arms™ earplugs from Defendants.

113.    One end of the Dual-Ended Combat Arms™ earplug (the olive end) was marketed, advertised, and promoted by Defendants to act as a traditional earplug and block as much sound as possible (the "closed" end or "blocked" position).

114.    The other end of the Dual-Ended Combat Arms™ earplug (the yellow end) was marketed, advertised, and promoted by Defendants to reduce loud impulse sounds such as battlefield explosions and artillery fire, while also allowing the user to hear quieter noises such as commands spoken by fellow soldiers and approaching enemy combatants (the "open" end or "unblocked" position).

115.    Regardless of which end was inserted into the ear, at all relevant times both ends of the Dual-Ended Combat Arms™ were marketed, advertised, and promoted by Defendants as providing sufficient and/or adequate protection.

116.    Defendants' Dual-Ended Combat Arms™ earplugs were sold to the military beginning in at least late 2003 and continued to be sold directly and indirectly by Defendants to the military and other civilians through 2015, when Defendants discontinued the earplugs.

117.    Defendants' Dual-Ended Combat Arms™ earplugs were also sold commercially to civilian users during this timeframe.

118.    Users, including Service Members, received Defendants' standard fitting instructions with respect to both ends of the Dual-Ended Combat Arms™ earplug. These instructions are the same for both ends—directing the user to grasp the earplug by the stem and insert it into the ear canal.

119.    The design of the Dual-Ended Combat Arms™ earplugs is defective because it prevents a snug fit and proper seal in the ear canal of the user.

120.    When inserted according to Defendants' standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the users, including Service Members' ear canals and fold back; when the inward pressure on the earplug is released, the folded back flange returns to its original shape which can cause loosening of the seal in the user's ear canal and thus inadequate hearing protection.

121.    Defendants did not provide an adequate warning of this inherent defect and risk even though Defendants were aware of this defect and risk at all relevant times.

122.    Because the Dual-Ended Combat Arms™ earplugs are symmetrical, following Defendants' standard fitting instructions results in a loosening of the fit and seal regardless of which side of the earplug is inserted into the ear canal.

### History of Testing: January 2000

123.    Defendants began testing the Dual-Ended Combat Arms™ earplugs in approximately December 1999 or January 2000.

124.    The purpose of this initial testing was to determine the NRR of the Dual-Ended Combat Arms™ earplugs.

125.    Hearing protection devices are classified by their potential to reduce noise in decibels ("dB"), a term used to categorize the power or density of sound.

126.    Hearing protection devices must be tested and approved by the American National Standards Institute ("ANSI") in accordance with the Occupational Safety & Health Administration ("OSHA") guidelines.

127.    Noise Reduction Rating ("NRR") is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment, or attenuation.

128.    The higher the NRR number associated with a hearing protection device, the greater the potential for noise reduction.

129.    Earplugs, including the Dual-Ended Combat Arms™ earplugs, are required to be sold with a stated NRR that accurately reflects the effectiveness of hearing protection.

130.    Defendants chose to conduct this testing at their own laboratory rather than at an outside, independent laboratory.

131.    Defendants' employees personally selected ten test subjects to test the Dual-Ended Combat Arms™ earplugs, some of whom were employees of Defendants.

132.    In an effort to purportedly determine the NRR of the Dual-Ended Combat Arms™ earplug, Defendants designed the January 2000 test to capture:  (1) each subject's hearing without

21

an earplug inserted; (2) each subject's hearing with the open end of the Dual-Ended Combat Arms™ earplug inserted (the unblocked position); and (3) each subject's hearing with the closed end of the Dual-Ended Combat Arms™ earplug inserted (the blocked position).

133.    Defendants' personnel monitored the results of each subject as the test was being performed. This type of monitoring allowed Defendants to stop the test if the desired NRR results were not achieved.

134.    Eight of the ten subjects were evaluated using the closed end of the Dual-Ended Combat Arms™ earplugs.

135.    Testing of these eight subjects revealed an average NRR of 10.9, which was far below the intended and desired NRR necessary for adequate hearing protection for users, including Service Members.

136.    Because Defendants' personnel were monitoring the results of each subject as the test was being performed, and because the test results were well below the intended and desired NRR necessary for adequate hearing protection after the testing of these eight subjects, Defendants prematurely terminated the January 2000 testing of the closed end of the Dual-Ended Combat Arms™ earplugs.

137.    Defendants' personnel decided not to test the closed end of the Dual-Ended Combat Arms™ earplugs for two of the ten subjects because the results were well below the intended and desired NRR for adequate hearing protection in the other test subjects.

138.    In looking into the cause of the low NRR, Defendants' personnel determined that when the closed end of the earplug was inserted into the user's ear according to the standard fitting instructions, the basal edge of the third flange of the open end would press against the user's ear and fold backwards. When the inward pressure on the earplug was released, the flanges on the

open end would return to their original shape and cause the earplug to loosen, often imperceptibly to the user.

139.    Given the symmetrical nature of the Dual-Ended Combat Arms™ earplugs, this defect that prevents a snug fit and good seal occurs when either end of the earplug is inserted according to the standard fitting instructions.

140.    In January 2000, Defendants' personnel documented in the so-called "Flange Report" why the Dual-Ended Combat Arms™ earplugs had failed to meet the necessary level of protection during testing; Defendants found that unless the opposing flange was folded back, the earplug would imperceptibly loosen and not provide the necessary level of hearing protection.

141.    Imperceptible loosening would allow dangerous sound waves past the earplug and damage the user's hearing.  This damage could result in hearing loss and tinnitus, which could be permanent in nature.

142.    As to testing on the open end of the Dual-Ended Combat Arms™, Defendants completed testing of all ten subjects and obtained a facially invalid result of -2 NRR, which would indicate that the open end of the earplug actually amplified sound, an unsound result with no valid scientific explanation.

143.    Defendants' represented the -2 NRR as a "0" NRR, which Defendants have displayed on the packaging of the Dual-Ended Combat Arms™ earplugs since the earplugs were first launched.

144.    Defendants falsely tout the "0" NRR as a benefit of the Dual-Ended Combat Arms™ earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection for impulse noise.

23

### History of Testing: February 2000

145.    Upon identifying the fit and seal defect with their Dual-Ended Combat Arms™ earplugs, Defendants re-tested the closed end of the Dual-Ended Combat Arms™ earplug in February 2000 using a different insertion method, contrary to the ultimate instructions that would be provided to the military or users, including Service Members ("February 2000 testing").

146.    When testing the closed end of the Dual-Ended Combat Arms™ earplugs, Defendants' personnel folded back the yellow flanges on the open end prior to inserting the closed end into the ear in order to create a tighter fit and seal.

147.    As a result of this reconfigured fitting procedure, Defendants achieved a "22" mean NRR on the closed end of the Dual-Ended Combat Arms™ earplugs.

148.    Defendants have displayed this 22 NRR on the packaging of the Dual-Ended Combat Arms™ earplugs since the earplugs were first "made available to consumers (both military and commercial)."

149.    Defendants, however, failed to properly warn military personnel and other users, including Service Members, of the Dual-Ended Combat Arms™ earplugs that the only potential way to achieve this purported NRR of 22 was to modify the Dual-Ended Combat Arms™ earplug by folding the flanges back on the opposite end.

150.    The open end of the Dual-Ended Combat Arms™ earplug was not re-tested using the reconfigured fitting procedure.

### Defendants' Representations and Omissions

151.    As early as 2000, Defendants were aware of the dangerous design defects associated with their Dual-Ended Combat Arms™ earplugs and the fact that the earplugs inadequately protected the hearing of users, including Service Members.

152.    Defendants knew the defective design of the Dual-Ended Combat Arms™ earplugs could cause the earplugs to loosen in the user's ear—imperceptible to not only the user but also trained audiologists visually observing a user—thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug, while the user and/or audiologist incorrectly believed that the earplug worked as intended.

153.    From 2003 to 2012, Defendants were the exclusive supplier of Dual-Ended Combat Arms™ earplugs to U.S. military personnel.

154.    At the time when Defendants became the exclusive supplier of Dual-Ended Combat Arms™ earplugs to U.S. military personnel, Defendants were aware of the products' defects that failed to protect users, including Service Members, from loud sounds.

155.    Defendants did not adequately warn of the defects with the Dual-Ended Combat Arms™ earplugs.

156.    Defendants did not adequately warn or instruct the users, including Service Members, of the Dual-Ended Combat Arms™ earplugs how to properly wear and insert them to achieve their advertised and promoted NRR rating.

157.    Defendants expressly certified that the Dual-Ended Combat Arms™ earplugs complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

158.    Defendants knew at the time they made their certifications that the Dual-Ended Combat Arms™ earplugs did not comply with the MPID.

159.    The pertinent Salient Characteristics set forth in the MPID, which were uniform across all military Requests for Proposals, are, in relevant part, as follows:

> 2.1.1. Earplugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the user to clearly hear

normal speech and other quieter sounds, such as voice commands, on the battlefield.

2.2.2.  The sound attenuation of both ends of the earplugs shall be tested in accordance with ANSI S3.19.

**2.4      Workmanship. The earplugs shall be free from all defects that detract from their appearance or impair their serviceability.**

**2.5      Instructions. Illustrated instructions explaining the proper use and handling of the earplugs shall be supplied with each unit.**

Solicitation No. SP0200-06-R-4202 at 41-42 (emphasis added).

160.    Defendants also knowingly used the results of the deliberately manipulated and flawed retest of the closed end of the earplugs to sell Dual-Ended Combat Arms™ earplugs to the military with the representation that the earplugs possessed a "22" NRR in the closed position and would provide good fit and seal for users, including Service Members.

161.    Defendants included standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the Noise Control Act, and the MPID.

162.    Defendants' standard instructions for "proper use" of their Dual-Ended Combat Arms™ earplugs do not instruct all users, including Service Members to use the "reconfigured" insertion method that was used in the February 2000 testing—a method that would require the user to fold back the flanges of the opposite end before inserting the earplug into the ear to achieve good fit and seal and adequate attenuation.

163.    Defendants' standard instructions for "proper use" of their Dual-Ended Combat Arms™ earplugs do not warn users, including Service Members, that the subjects who tested the earplugs did not follow these standard instructions, or that the earplugs only received the 22 NRR because the subjects used the reconfigured insertion method, which required them to fold back the flanges of the opposite end before inserting the earplug into the ear.

164. Instead, Defendants' standard instructions for "proper use" of their Dual-Ended Combat Arms™ earplugs improperly direct users, including Service Members, to simply insert the earplugs into the ear canal.

165. By failing to properly instruct users, including Service Members, of the Dual-Ended Combat Arms™ earplug to fold back the flanges on the non-inserted end of the earplug before inserting the opposite end of the earplug into their ears (which is necessary to achieve the promoted 22 NRR), Defendants falsely overstated the amount of hearing protection provided by the closed end of the Dual-Ended Combat Arms™ earplug.

166. Defendants likewise misstated the amount of hearing protection provided by the open end of the Dual-Ended Combat Arms™ earplug.

167. Defendants' labeling, packaging, and marketing of the Dual-Ended Combat Arms™ earplugs' standard instructions is misleading to the user and has caused thousands of users, including Service Members, to suffer significant hearing loss and tinnitus, and has further exposed millions more to the risk caused by their defective Dual-Ended Combat Arms™ earplugs.

168. Defendants' labeling, packaging and marketing of the Dual-Ended Combat Arms™ earplugs' standard instructions with an NRR of "22" with corresponding instructions to simply insert the earplugs into the ear canal is misleading to the user and has caused thousands of users, including Service Members, to suffer significant hearing loss and tinnitus, and has further exposed millions more to the risk caused by their defective Dual-Ended Combat Arms™ earplugs.

169. Despite knowing that their flawed testing of the Dual-Ended Combat Arms™ earplugs to achieve the 22 NRR involved steps to manipulate the fit of the Dual-Ended Combat Arms™ earplugs, Defendants' instructions for use for the Dual-Ended Combat Arms™ earplugs do not instruct, and never have instructed, the user to fold back the flanges on the open end of the

27

plug before inserting the closed end of the plug into their ear to achieve proper fit and seal necessary for adequate attenuation.

170.    Defendants' instructions that instead direct the user to simply insert the earplugs into the ear canal are facially inadequate.

171.    In product packaging, Defendants misled users, including Service Members, by providing a mere "fitting tip" that suggest that fitting could be improved if the sealing rings of the outward directed plug are rolled back upon themselves. This "fitting tip" was misleading in that it did not inform users, including Service Members that folding back the flanges of the outer end was necessary to obtain proper fit and seal, and the level of NRR hearing protection as represented.

172.    Defendants were aware prior to selling the earplugs to the military that its testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs they wanted on both ends of the Dual-Ended Combat Arms™ earplugs, and Defendants continued to use these inaccurate NRRs to market and promote the earplugs for more than ten years without disclosing the design defect in the earplugs.

173.    At all times material hereto, Defendants committed a continuing fraud in obfuscating and failing to disclose facts that were known to them relating to the fraudulent testing they performed—facts that were not discovered and could not have been discovered by Plaintiff undertaking reasonable due diligence.

174.    Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

28

175.    Plaintiff could not have discovered that Plaintiff's hearing damage was caused by a defect in the Dual-Ended Combat Arms™ earplugs, due to the fact that the defect involved "imperceptible loosening."

176.    Defendants are jointly and severally liable to Plaintiff for their individual and collective tortious acts.

177.    On July 26, 2018, Defendant 3M agreed to pay $9.1 million to resolve allegations that it knowingly sold the Dual-Ended Combat Arms™ Earplugs to the United States military without disclosing defects that hampered the effectiveness of the hearing protection device.

## TOLLING OF STATUTES OF LIMITATIONS

178.    Under the Servicemembers Civil Relief Act, the period of Plaintiffs' military service may not be included in computing any statute of limitations applicable herein. See 50 U.S.C. § 3936.

179.    Plaintiffs could not, by the exercise of reasonable diligence, have discovered Defendants' wrongful acts as the cause of their injuries at an earlier time, because, at the time of these injuries, the cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

180.    Further, the running of the statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Through their affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiffs the risks associated with the defects in the Dual-Ended Combat Arms™ earplugs.

181.    As a result of Defendants' actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that they had been exposed to the

defects and risks alleged herein, and that those defects and risks were the direct and proximate result of Defendants' acts and omissions.

182.    Through Defendants' affirmative misrepresentations and omissions pertaining to the safety and efficacy of the Dual-Ended Combat Arms™ earplugs, Plaintiffs were prevented from discovering this information sooner because Defendants misrepresented and continued to misrepresent the defective nature of the Dual-Ended Combat Arms™ earplugs.

**CAUSES OF ACTION**

**COUNT I: STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

183.    Plaintiffs incorporate by reference the paragraphs above as if fully set forth herein.

184.    Defendants are the manufacturers and sellers of the defective Dual-Ended Combat Arms™ earplugs.

185.    The defective Dual-Ended Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defectively designed in that the design of the earplug caused it to loosen in the wearer's ear, which allowed damaging sounds to enter the ear canal.

186.    The defective Dual-Ended Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective and unreasonably dangerous for their ordinary and expected use, because they did not stop the damaging loud noises from military service that can cause hearing loss or tinnitus.

187.    The defective Dual-Ended Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective and not reasonably safe for their intended use.

188.    The Dual-Ended Combat Arms™ earplugs were defective in that the design of the earplug caused them to loosen in the user's ear, imperceptibly to the user, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

189.    When the Dual-Ended Combat Arms™ earplugs were inserted into the ear according to standard fitting instructions provided by Defendants, a proper seal was not formed with the ear canal.

190.    The defect had the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect was that the earplug may not maintain a tight seal in some users, including Service Members', ear canals such that dangerous sounds can bypass the earplug altogether, thereby posing serious risk to the user's hearing, unbeknownst to him or her.

191.    Defendants knew of the defect in the Dual-Ended Combat Arms™ earplugs.

192.    No reasonably prudent manufacturer would design, distribute, and sell an earplug with the knowledge that Defendants had, namely that the earplugs would not guard against loud impulse noises and could cause hearing loss and tinnitus.

193.    The defective Dual-Ended Combat Arms™ earplugs that the Defendants manufactured, distributed, and sold were delivered to Plaintiffs without any change in their defective condition and were used by Plaintiffs in the manner expected and intended.

194.    Defendants manufactured, distributed, and sold the Dual-Ended Combat Arms™ earplugs without providing adequate or proper instructions to avoid the harm that could foreseeably occur because of using the earplugs in the manner the Defendants' standard fitting instructions directed.

31

195.    Defendants owed a duty of care to Plaintiffs to design, manufacture, and sell earplugs that met the specified performance criteria and were otherwise fit for use by Service Members to protect them from damaging noises typically incurred in military service. Defendants breached this duty.

196.    Defendants owed a duty of care to Plaintiffs to design and sell earplugs that were fit for use in military service and that performed according to the specifications that Defendants certified the Dual-Ended Combat Arms™ earplugs would meet. Defendants breached this duty.

197.    Defendants owed a duty of care to Plaintiffs to design and sell earplugs that were safe when used for their intended purpose; i.e., when in the presence of loud impulse sounds. Defendants breached this duty.

198.    Plaintiffs suffered injury and damage as a direct and proximate result of the defective and unreasonably, unsafe, dangerous condition of the Dual-Ended Combat Arms™ earplugs that the Defendants manufactured, distributed, and sold.

## COUNT II: STRICT PRODUCT LIABILITY – USE DEFECTIVENESS

199.    Plaintiffs incorporate by reference the paragraphs above as if fully set forth herein.

200.    Defendants are the manufacturers and sellers of the defective Dual-Ended Combat Arms™ earplugs.

201.    The defective Dual-Ended Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective because the earplugs did not come with adequate warnings, instructions, or labels.

202.    The defective Dual-Ended Combat Arms™ earplugs that Defendants manufactured, distributed, and sold were, at the time they left Defendants' control, defective because Defendants failed to warn, failed to provide instructions, and failed to provide an adequate

label that included the modified fitting instructions necessary for the earplug to fit correctly in the wearer's ear and create the seal necessary to block out the damaging sounds.

203.    Defendants had a duty to manufacture, design, and sell the Dual-Ended Combat Arms™ earplugs with reasonable and due care for the safety and well-being of wearers, including Plaintiffs. Defendants breached that duty.

204.    Defendants had a duty to provide adequate warnings and/or instructions to prevent the risks associated with the Dual-Ended Combat Arms™ earplugs when worn in the ordinary course. Defendants breached that duty.

205.    It was foreseeable to Defendants that the Dual-Ended Combat Arms™ earplugs would be unreasonably dangerous if distributed without the warning regarding the risks of damage to the ear with an improper fit and/or modified fitting instructions.

206.    Not only was it foreseeable, it was foreseen by Defendants. During testing, Defendants discovered that when the Dual-Ended Combat Arms™ earplugs were inserted into the ear according to standard fitting instructions, a proper seal was not formed with the ear canal. These fitting instructions were nonetheless provided to users by Defendants.

207.    Defendants discovered that when the green end of the Dual-Ended Combat Arms™ earplug was inserted into the ear using the standard fitting instructions, the basal edge of the third flange of the yellow end pressed against the wearer's ear and folded backward. When the inward pressure of the earplug was released, the yellow flanges tended to return to their original shape, thereby loosening the earplug, often imperceptibly to the wearer. And, because the Dual-Ended Combat Arms™ earplug was symmetrical, this same problem occurred when the earplug was reversed.

208. Defendants had a post-sale duty to warn of the above alleged product-related defects and risks because Defendants knew or reasonably should have known that the Dual-Ended Combat Arms™ earplug posed a substantial risk of harm to servicemen, including Plaintiffs; the servicemen who used the Dual-Ended Combat Arms™ earplug can reasonably be assumed to be unaware of the risk of harm caused by the above-alleged defects because said defects were imperceptible; a warning or instruction showing how to correctly and safely use the Dual-Ended Combat Arms™ earplug could have been effectively communicated to and acted upon by the servicemen to whom a warning or instruction might be provided; and the risk of harm, including but not limited to hearing loss in servicemen, is sufficiently great to justify the slight burden of providing a warning or instruction. Defendants breached this duty by failing to provide a post-sale warning or instruction.

209. The Dual-Ended Combat Arms™ earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Dual-Ended Combat Arms™ earplugs would allow damaging sounds to bypass the earplug thereby posing a serious risk to Plaintiffs' hearing unbeknownst to Plaintiffs.

210. The warnings and instructions that accompanied the Dual-Ended Combat Arms™ earplugs failed to provide the level of information that an ordinary wearer would expect when using the Dual-Ended Combat Arms™ earplugs in a manner reasonably foreseeable to Defendants.

211. Had Plaintiffs received a proper or adequate warning as to the risks associated with the use of the Dual-Ended Combat Arms™ earplugs in the manner contemplated by Defendants, Plaintiffs would not have used them.

212. Additionally, and/or alternatively, had Plaintiffs received the modified fitting instructions that were used by Defendants during the testing, which were not disclosed to Plaintiffs,

34

Plaintiffs would have followed the modified fitting instructions to ensure a proper seal to prevent damaging sounds from entering the ear canal.

213.    Plaintiffs suffered injury and damage as a direct and proximate result of the use-defectiveness and Defendants' failures to warn and/or provide adequate instructions regarding the dangerous condition of the Dual-Ended Combat Arms™ earplugs that the Defendants manufactured, distributed, and sold.

## COUNT III: NEGLIGENCE

214.    Plaintiffs incorporate by reference the paragraphs above as if fully set forth herein.

215.    Defendants had a duty to each use their professional expertise and exercise that degree of skill and learning ordinarily used under the same or similar business by a person or entity in Defendants' business of designing, developing, testing, manufacturing, marketing, and distributing hearing protection devices.

216.    Defendants further had a duty to comply with the certifications made to the U.S. government about the qualities and performance characteristics of the Dual-Ended Combat Arms™ earplugs. Plaintiffs are among the class of persons designed to be protected by these regulations and certification standards. Plaintiffs were foreseeable plaintiffs to Defendants.

217.    Defendants breached these duties by failing to exercise the required degree of care in designing, developing, testing, manufacturing, marketing, and distributing hearing protection devices in a manner to provide the specified level of hearing protection.

218.    The damages suffered by Plaintiffs were or should have been reasonably foreseeable to Defendants.

219.    Plaintiffs were damaged by Defendants' conduct, including but not limited to damage to their hearing.

35

220. Defendants' breaches are a direct and proximate cause of the injuries and damages suffered by Plaintiffs in an amount not yet fully determined, but in excess of $50,000 each. Plaintiffs are entitled to recover damages and other relief as available, at law or equity, as a direct and proximate result of Defendants' conduct.

**COUNT IV: NEGLIGENT MISREPRESENTATION**

221. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

222. Defendants made negligent misrepresentations with respect to the Dual-Ended Combat Arms™ earplugs including, but not limited to, the following particulars:

   a. Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs had been tested and found to be safe and effective protection against loud impulse noises using its provided standard instructions for use.

   b. Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that an NRR 22 for closed end and NRR of 0 for open end could be consistently achieved without wearers folding back the earplug's opposing side's flanges before inserting the Dual-Ended Combat Arms™ earplugs.

   c. Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs would not imperceptibly become loose, and thus less effective, subsequent to insertion.

   d. Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs conformed to best manufacturing practices, U.S. military specifications and federal regulations governing hearing attenuation devices.

223. Defendants did not exercise reasonable care or competence in obtaining or communicating the information to the public regarding the characteristics and qualities of the

36

Dual-Ended Combat Arms™ earplugs.

224.    Plaintiff and the U.S. military did, in fact, reasonably rely upon Defendants' representations regarding the Dual-Ended Combat Arms™ earplugs.

225.    As a direct and proximate result of the acts and conduct of Defendants, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting, and debilitating physical and mental pain and suffering, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

226.    As a further direct and proximate result of the acts and conduct of Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, in an amount to be proven at trial.

227.    As a further direct and proximate result of the acts and conduct of Defendants, Plaintiff has incurred medical, hospital, and related expenses and, on information and belief, will continue to incur such expenses in the future, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

### COUNT V: FRAUDULENT MISREPRESENTATION

228.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

229.    Defendants made fraudulent misrepresentations with respect to the Dual-Ended Combat Arms™ earplugs including, but not limited to, the following particulars:

   a. Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs had been tested and found to be safe and effective protection against loud impulse noises using its provided standard instructions for use.

   b. Defendants represented through oral representations, labeling,

37

advertising, marketing materials, and publications that an NRR 22 for closed end and NRR of 0 for open end could be consistently achieved without wearers folding back the earplug's opposing side's flanges before inserting the Dual-Ended Combat Arms™ earplugs.

c. Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs would not imperceptibly become loose, and thus less effective, subsequent to insertion.

d. Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs conformed to best manufacturing practices, U.S. military specifications and federal regulations governing hearing attenuation devices.

230. Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risks of the Dual-Ended Combat Arms™ earplugs to consumers, including Plaintiff, and the U.S. military.

231. The representations were made by Defendants with the intent that the U.S. military and service members, including Plaintiff, rely upon them.

232. Defendants' representations were made with the intent of defrauding and deceiving Plaintiff and the U.S. military to induce and encourage the sale of the Dual-Ended Combat Arms™ earplugs.

233. Plaintiff and the U.S. military did in fact rely upon the representations. In the absence of Defendants' representations, the Dual-Ended Combat Arms™ earplugs would not be used in the manner in which Plaintiff used them.

234. Defendants' fraudulent representations evidence its callous, reckless, and willful indifference to the health, safety, and welfare of consumers and service members, including Plaintiff.

38

235.    Upon information and belief, Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.

236.    As a direct and proximate result of the acts and conduct of Defendants, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting, and debilitating physical and mental pain and suffering, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

237.    As a further direct and proximate result of the acts and conduct of Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, in an amount to be proven at trial.

238.    As a further direct and proximate result of the acts and conduct of Defendants, Plaintiff has incurred medical, hospital, and related expenses and, on information and belief, will continue to incur such expenses in the future, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VI: FRAUDULENT CONCEALMENT

239.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

240.    Defendants fraudulently concealed information with respect to the Dual-Ended Combat Arms™ earplugs including, but not limited to, the following particulars:

   a.  Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs had been tested and found to be safe and effective protection against loud impulse noises using its provided standard instructions for use.

   b.  Defendants represented through oral representations, labeling,

39

advertising, marketing materials, and publications that an NRR 22 for closed end and NRR of 0 for open end could be consistently achieved without wearers folding back the earplug's opposing side's flanges before inserting the Dual-Ended Combat Arms™ earplugs.

c.  Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs would not imperceptibly become loose, and thus less effective, subsequent to insertion.

d.  Defendants represented through oral representations, labeling, advertising, marketing materials, and publications that the Dual-Ended Combat Arms™ earplugs conformed to best manufacturing practices, U.S. military specifications and federal regulations governing hearing attenuation devices.

241.    Defendants had sole access to material facts concerning the dangers and unreasonable risks of the Dual-Ended Combat Arms™ earplugs.

242.    The concealment of information by Defendants about the risks of the Dual-Ended Combat Arms™ earplugs was intentional, and the representations made by Defendants was known by Defendants to be false.

243.    The concealment of information and the misrepresentations about the Dual-Ended Combat Arms™ earplugs were made by Defendants with the intent that U.S. military and service members, including Plaintiff, rely upon them.

244.    Plaintiff and the U.S. military relied upon the representations and were unaware of the substantial risks of the Dual-Ended Combat Arms™ earplugs which Defendants concealed from the public, including Plaintiff.

245.    Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of service members such as Plaintiff.

246.    As a direct and proximate result of the acts and conduct of Defendants, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on

40

information and belief, will suffer indefinitely into the future, severe, lasting, and debilitating physical and mental pain and suffering, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

247.    As a further direct and proximate result of the acts and conduct of Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, in an amount to be proven at trial.

248.    As a further direct and proximate result of the acts and conduct of Defendants, Plaintiff has incurred medical, hospital, and related expenses and, on information and belief, will continue to incur such expenses in the future, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

### COUNT VII: NEGLIGENCE *PER SE*

249.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

250.    Defendants, through their testing, distributing, designing, marketing, and labeling of the Dual-Ended Combat Arms™ earplugs, violated federal regulations and statutes, including, but not limited to, the False Claims Act, 31 U.S.C. § 3729, *et seq*., the Noise Control Act, 42 U.S.C. § 4901, *et seq.,* 40 C.F.R. § 211.204-4(e) and 40 C.F.R. § 211.206-1 of the EPA regulations.

251.    Defendants also violated the ANSI S3.19-1974 testing protocol, federal specifications governing the product, and all applicable consumer protection statutes, as set out below.

252.    Defendants' violations of these state and federal laws and regulations caused Plaintiff's injuries.

253.    Plaintiff is within the class of persons the statutes and regulations are designed to

protect, and Plaintiff's injuries are the type of harm the statutes and regulations are designed to prevent.

254.    Defendants' actions also breached its parallel common law duties to provide safe products, to advertise honestly, and to provide reasonable assurance with respect to the safety and effectiveness of the Dual-Ended Combat Arms™ earplugs for the purposes advertised.

255.    Defendants' violations of the aforementioned laws, statutes, and regulations constitute a breach of duty subjecting Defendants to civil liability for all damages arising therefrom, under theories of negligence *per se*.

256.    As a direct and proximate result of the acts and conduct of Defendants, Plaintiff has been injured in his health, strength and activity, and has suffered, continues to suffer and, on information and belief, will suffer indefinitely into the future, severe, lasting, and debilitating physical and mental pain and suffering, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

257.    As a further direct and proximate result of the acts and conduct of Defendants, Plaintiff has lost earnings and earning capacity, and will continue to incur such losses for an indefinite period of time in the future, in an amount to be proven at trial.

258.    As a further direct and proximate result of the acts and conduct of Defendants, Plaintiff has incurred medical, hospital, and related expenses and, on information and belief, will continue to incur such expenses in the future, for which Plaintiff is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

### COUNT VIII: FRAUD AND DECEIT

259.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

260.    Defendants conducted unlawful and improper testing on the Dual-Ended Combat Arms™ earplugs.

261.    As a result of Defendants' unlawful and improper testing, Defendants blatantly and intentionally distributed false information, which overstated the amount of hearing protection provided by the Dual-Ended Combat Arms™ earplugs.

262.    As a result of Defendants' unlawful and improper testing, Defendants intentionally omitted and misrepresented certain test results to Plaintiff.

263.    Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and Plaintiff.

264.    The information distributed to Plaintiff by Defendants contained material representations of fact and/or omissions concerning the hearing protection provided by the Dual-Ended Combat Arms™ earplugs.

265.    These representations were all false and misleading.

266.    Upon information and belief, Defendants intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-Ended Combat Arms™ earplugs.

267.    It was the purpose of Defendants in making these representations to deceive and defraud the public and/or Plaintiff, to gain the confidence of the public, and/or Plaintiff, to falsely ensure the quality and fitness for use of the Dual-Ended Combat Arms™ earplugs and induce the public, and/or Plaintiff to purchase, request, dispense, recommend, and/or continue to use the Dual-Ended Combat Arms™ earplugs.

268.    Defendants made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiff that the Dual-Ended Combat Arms™ earplugs were fit and safe for use.

269.    These representations and others made by Defendants were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

270.    These representations and others, made by Defendants, were made with the intention of deceiving and defrauding Plaintiff, and were made in to induce Plaintiff to rely upon misrepresentations and caused Plaintiff to purchase, use, rely on, request, dispense, and/or recommend the Dual-Ended Combat Arms™ earplugs.

271.    Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-Ended Combat Arms™ earplugs to the public at large, Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

272.    Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Dual-Ended Combat Arms™ earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-Ended Combat Arms™ earplugs.

273.    Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling Plaintiff, into a sense of security so that Plaintiff would rely on the representations made by Defendants, and purchase, use and rely on the Dual-Ended Combat Arms™ earplugs.

44

274.    Plaintiff did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations and were thereby induced to use and rely on the Dual-Ended Combat Arms™ earplugs.

275.    At the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-Ended Combat Arms™ earplugs.

276.    Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

277.    Had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of Dual-Ended Combat Arms™ earplugs, Plaintiff would not have used and/or relied on the Dual-Ended Combat Arms™ earplugs.

278.    Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiff.

279.    As a result of the foregoing acts and omissions Plaintiff requires and/or may require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services. Accordingly, Plaintiff demands judgment against the Defendants for compensatory, treble and punitive damages, including costs and attorney's fees, and all such other relief as the Court may deem proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request from Defendants, jointly and severally, compensatory damages, together with appropriate equitable relief, costs and attorneys' fees as follows:

D. Award of all such other and further relief as may be available at law or equity and

may be proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 25, 2019                    JOHNSON BECKER, PLLC

Stacy Hauer (#0317093)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Tel.: (612) 436-1800
Fax: (612) 436-1801
shauer@johnsonbecker.com

Raymond C. Silverman (*Pro Hac Vice
Anticipated*)
Melanie H. Muhlstock (*Pro Hac Vice Anticipated*)
Parker Waichman LLP
6 Harbor Park Drive
Port Washington, NY 11050
516-466-6500 | 516-466-6665
rsilverman@yourlawyer.com
mmuhlstock@yourlawyer.com

*Attorneys for Plaintiff*

46

## **ACKNOWLEDGMENT**

The undersigned hereby acknowledges that costs, disbursements, and reasonable

attorney's fees and witness fees may be awarded pursuant to Minn. Stat. § 549.211, Subd. 1, to

the parties against whom the allegations in this pleading are asserted.

Dated: July 25, 2019                     JOHNSON BECKER, PLLC


Stacy Hauer (#0317093)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Tel.: (612) 436-1800
Fax: (612) 436-1801
shauer@johnsonbecker.com

47